YAZOO & M. V. R. CO. *v.* CLAIBORNE COUNTY.

(In Banc.   May 26, 1941.   Suggestion of Error Overruled July 11, 1941.)

[2 So. (2d) 548.   No. 34432.]

A. S. Coody, Jr., and May & Byrd, all of Jackson, and W. P. Martin, Jr., R. C. Beckett, and E. C. Craig, all of Chicago, Ill., for appellant.

E. S. & J. T. Drake, of Port Gibson, for appellee.

**Alexander & Satterfield,** of Jackson, for appellee.

Argued orally by **A. S. Coody, Jr.**, and **R. C. Beckett,** for appellant, and by **J. T. Drake, Jr.**, and **John C. Satterfield**, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The appellee, the defendant in the court below, demurred to the appellant's declaration. This demurrer was sustained, the appellant declined to plead further, and its action was thereupon dismissed. The declaration alleges in substance that between June 5th and September 4, 1939, the appellee's board of supervisors borrowed the sum of $50,000 to defray the general expenses of the county in anticipation of taxes to be collected for the next fiscal year, for the payment of which the board levied on November 9, 1939, a special ad valorem tax of twelve mills, on all property in the county, this levy being illegal to the extent of ten mills thereof. The tax collector insisted on the payment by the appellant of the full amount of this tax on its property, and it paid the same under protest, thereby paying the sum of $4,489.88 in excess of the tax of two mills, which the board of supervisors had the right to levy and for which amount a judgment against the county was sought.

According to the declaration, Claiborne County "has a population of less than thirty thousand persons, and has a total assessed valuation (of property) for purposes of taxation of $3,646,617 in 1939." Section 251, Code of 1930, which appeared in the Code of 1906 as Section 334, provides that counties having less than thirty thousand inhabitants may borrow money not exceeding "$50,000.00 in one year, in anticipation of taxes, for the purpose of defraying the expenses of the county, and may issue their negotiable notes therefor maturing not later than February 15th of the year succeeding the year in which they

are issued." Section 252 provides that a special tax may be levied for the payment of the money borrowed. By Section 16, Chapter 235, Laws of 1932, the amount of money which boards of supervisors were permitted, by Sections 251, 252 of the Code, to borrow in anticipation of the collection of taxes and to levy a special tax therefor was limited to "25 per cent of the estimated amount of taxes collected, and/or to be collected, under the last preceding annual tax levies."

According to the declaration, the $50,000 here borrowed was within the twenty-five per cent of the aggregate of all taxes collected by the county for all purposes under the levies therefor in 1938. The taxes collected for general county purposes amounted to only $28,536.70, twenty-five per cent thereof is $7,134.17, to cover which only, the appellant says, the county was here authorized to borrow money. The question for decision then is: When a particular fund in the county treasury, for instance as here, the fund from which the general county expenses must be paid, is insufficient for the funds' purpose, is the county limited by Section 16, Laws of 1932, in borrowing money to cover its maturing obligations payable out of that fund to twenty-five per cent of the amount of taxes collected for that fund under the last preceding levy therefor, or only by the amount of taxes collected under all of the levies for all purposes? To express it differently, do the words "under the last preceding annual tax levies" in that section refer to taxes collected for all purposes, or only to the taxes collected for the particular purpose for the accomplishment of which it has become necessary for the county to borrow money?

Section 214, Code of 1930, which appeared in former codes, authorizes boards of supervisors "to levy such taxes as may be necessary to meet the demands of their respective counties, upon such persons and property as are subject to state taxes for the time being, not exceeding the limits that may be prescribed by law." Prior to 1932, each session of the Legislature imposed a limit

on the amount of taxes which a county could levy. E. g. Chapter 268, Laws of 1930, where the limit for county purposes exclusive of road, bridge and school taxes and sinking funds, for the years 1930 and 1931 was fixed at six mills on the dollar. In 1932, this method of restricting boards of supervisors in the levy of county taxes was changed by Chapter 104 thereof of the laws of that year, which provides that after September 30, 1932, counties should not levy taxes in excess of the limitations therein provided. This limitation varied according to the assessed valuation of taxable property in the county. The taxes permitted for general county purposes in counties having an assessed valuation of less than three million dollars was fixed at ten mills on the dollar, and in counties having an assessed valuation of three million dollars and less than eight million dollars, it was fixed at eight mills on the dollar. Other sections of the statute provide limitations on the amount of taxes to be levied for roads, bridges and schools. As a part of the legislative intention set forth in Chapter 104, to limit the power of counties to impose taxes, the Legislature, at the same session, also enacted Chapter 235, Laws of 1932, the title of which declares that its purpose is to restrict the power of counties and municipalities to borrow money and to levy taxes for the payment thereof. When we remember that theretofore the Legislature had been limiting counties to the levy of a tax of six mills on the dollar (sometimes eight mills) for general county purposes, it is hardly probable that it intended by Section 16, Chapter 235, Laws of 1932, to practically abolish this limitation and permit counties, after levying the prescribed annual tax (here six mills on the dollar) to thereafter, by a special tax, increase the levy for general county purposes (as here attempted) by more than twice the original levy. Chapters 104 and 235 of the Laws of 1932 are parts of the same legislative plan, without either of which that plan would be incomplete, and therefore must be construed together. When so construed, it is clear that the

words "under the last preceding annual tax levies" in Chapter 235 refer to the preceding levy or levies for the purpose for the accomplishment of which the additional special tax is permitted to be levied.

The judgment of the court below will be reversed, the demurrer to the declaration will be overruled, and the cause remanded.

So ordered.

**Roberds, J.,** did not participate in this decision.

DISSENTING OPINION.

**Anderson, J.,** delivered a dissenting opinion.

Claiborne County found that it needed the sum of $50,000 to tide over the general county expense funds until the taxes for the succeeding year came in. The majority opinion holds that a little over $7,000 was the limit of the borrowing authority of the county for that purpose. In other words, that the county needed the sum of $50,000, but under the law could only borrow about one-seventh of that amount.

Except for the change in Section 251, Code of 1930, made by Section 16 of Chapter 235 of the Laws of 1932, the County could have borrowed as much as $50,000 without any regard to the amount of the tax levies. That section so provides as to counties of not less than thirty thousand inhabitants. The first paragraph of Section 16 of that Act which makes the change out of which this litigation arose is in this language: "That from and after September 30th, 1932, no county or municipality shall borrow money, or issue notes, loan warrants or other interest bearing obligations, in anticipation of the collection of taxes for the next succeeding fiscal year, in excess of 25 per cent of the estimated amount of taxes collected, and/or to be collected, under the last preceding annual tax levies; and any obligations issued in excess

of the amount authorized to be issued under the provisions of this Act shall be void."

The majority opinion holds that the limit was twenty-five per cent of the preceding tax levy alone for common county purposes which it states amounted to something like $7,000, which according to the finding of the board was wholly inadequate for the purpose. Section 16 expressly provides to the contrary. It is twenty-five per cent of the estimated amount of taxes to be collected "under the last preceding annual tax levies." The majority opinion has simply written in the statute the word "levy" for the word "levies."